# WITHERS *vs.* THE STATE, ex rel. POSEY.

[APPEAL FROM ORDER OF CIRCUIT COURT GRANTING MANDAMUS.]

1. *When appeal lies.*—An appeal lies to the supreme court, from an order of the circuit court granting a *mandamus* against the mayor of a city.

2. *Averments of petition for mandamus.*—In an application for a *mandamus*, by an attorney-at-law who has been denied the right to appear as counsel in a municipal court, an averment that the relator "is a practitioner of law in all the courts of this State, both of state and federal jurisdiction," is not a sufficient allegation of his legal right to practice as an attorney in the courts named.

3. *Attorney's right to practice before municipal court.*—Although a *quasi*-criminal proceeding before the mayor of Mobile, for an alleged violation of a municipal ordinance, is neither a "criminal prosecution," nor a "civil cause," within the meaning of the 10th and 29th sections of the 1st article of the constitution, securing to a party the right "to be heard by himself and counsel;" yet, under section 730 of the Code, construed in harmony with the general spirit and policy of these constitutional provisions, an attorney-at-law who has been regularly licensed by the supreme court, and who has taken the prescribed oath, has a legal right to appear, when employed for that purpose, as counsel for persons who are on trial before the mayor for alleged violations of the municipal laws; and, under section 3403, he has also a right to appear as counsel for the accused on a preliminary investigation before the mayor as committing magistrate.

4. *Power of court to remove or silence attorney.*—For any disrespectful or contemptuous behavior in court, tending to impair the respect due to judicial tribunals, or to interrupt the due course of trial, an attorney may be punished at the time for contempt, (Code, §§ 561–3;) and for any willful violation of professional duty he may be removed or suspended from his office, (§§ 747–61;) but, until he has been removed or suspended by the judgment of the circuit court, rendered in a statutory proceeding instituted for that purpose, no court can exclude him from practice at its bar, on account of any disrespectful language or conduct on a past occasion.

5. *When mandamus lies.*—If a court prohibits an attorney, whose license authorizes him to practice before it, and who has not been removed or suspended in the mode prescribed by the statute, from appearing at its bar as counsel in causes in which he has been employed, this is the deprivation of a clear legal right, to the enjoyment of which he will be restored by *mandamus*.

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. C. W. RAPIER.

THE record in this case shows, that on the 16th April, 1860, Ben Lane Posey made an application to said court for a *mandamus*, to be directed to Jones M. Withers, the mayor of the city of Mobile, commanding him to allow said relator to appear as an attorney and counsellor at the bar of the mayor's court. The petition, verified by affidavit, was in the following words; "Your petitioner, on behalf of himself and C. Russell and Robert Daly, respectfully shows the following facts: 1. That your petitioner is a practitioner of law in all the courts of this State, both of state and federal jurisdiction, and, as such, has paid a license by way of tax to the city of Mobile for the present year. 2. That, as such practitioner of law, he has appeared, whenever employed to do so, in all the courts held in this State; that on the 16th instant, he appeared in the court of the mayor, aldermen and common council of the city of Mobile, holding said court, as counsel for Catherine Russell, who was on trial before said court on a criminal charge, and also upon a civil action, for violating an ordinance of said city ; that he claimed the privilege for himself as such counsel, and the right for his client, to cross-examine the witnesses against her, but said Withers stopped him, and refused to let him do so ; that your petitioner insisted upon his right and privilege, but was compelled to submit to the illegal and arbitrary decision of the said Withers. Your petitioner further states, that on the morning of the 17th instant, he appeared as counsel for one Robert Daly, who was before said Withers on a criminal charge, and also for violating a city ordinance, but was refused admittance within the bar of said court, by the order (as he was informed) of said Withers; that he waited until the opening of said court, and then stated to said Withers, that he appeared as counsel for a prisoner who was before said court on a criminal charge, and demanded the right, in behalf of said prisoner, to defend his cause; that said Withers

positively refused to allow said prisoner to be defended by your petitioner, and told your petitioner that he should not appear before him as counsel in any case, and ordered the police to refuse admittance to your petitioner within the bar of said court. Your petitioner states, that the said proceedings of said Withers are reckless and high-handed violations of the constitutional rights of the said persons for whom he appeared as counsel, by which they were deprived of the sacred right of defense by counsel of their own choosing, and were deprived of their liberty and property on an *ex-parte* hearing ; and were violations also of your petitioner's chartered right to practice in all the courts of this State. Your petitioner is informed and believes, that on the same day when he was denied his privileges as counsel by said Withers, G. Y. Overall and C. P. Robinson were allowed by him to exercise the full privileges of counsel in said court ; and your petitioner is thence bound to infer, that said Withers was actuated by malicious and revengeful feelings towards your petitioner, and sought to gratify them by depriving him of the profits of his profession in his practice before said court. Wherefore," etc.

A rule *nisi* having been issued on the filing of this petition, and served on said Withers, he appeared, and filed an answer, in which were incorporated the following exceptions to the petition : "1st, that said Posey has by law no right to appear as an attorney in the court of the mayor, aldermen and common council of the city of Mobile, nor before respondent holding court as mayor; 2d, that no party held to answer before the court has complained of being deprived of the services of said Posey ; 3d, that said Posey does not show himself to be entitled to practice law in any of the courts of Alabama; and, 4th, that said Posey shows no cause for a *mandamus*." In reference to what occurred in the mayor's court on the 16th April, the answer contained this statement : "Said Posey came into said court on the 16th April, assuming to act as counsel for one Catherine Russell, who was on trial for furnishing ardent spirits to a negro without authority. Respondent had examined a witness fully, when

said Posey commenced asking the same questions of the witness which respondent had asked, and which the witness had fully answered. Respondent told him that he was propounding questions which had been already propounded and answered; that if there was any new matter to be brought out, or any explanations to be given, he would confine himself to such. To this said Posey answered, that he had a right to examine the witness in his own way. Respondent then told him, he had no right to examine at all. Posey then said, that he would appeal the case; and respondent replied, 'Very well, you can do so when the case is decided.' This is all that occurred on the 16th." The answer further admitted, that on the morning of the 17th April, when Posey claimed to appear as counsel for Daly, he was refused admittance to the bar by order of respondent; alleged that said Posey had published in the newspapers several libelous articles, calculated to bring the respondent and his court into contempt and disrepute, and which were made exhibits to the answer; and contained the following additional statements: "Respondent knows that said Posey pretends to be a lawyer, but he has never produced or shown to respondent any evidence of his right to practice law in Alabama; nor has respondent any knowledge or information of such right, except that he pretends to it, and frequents the courts. * * Respondent insists, that said Posey is a mere stirrer up of strife; and respondent believes that his object in coming into the mayor's court is not to promote justice, but to hinder, delay and defraud the public of justice. If said Posey had any right to practice in the mayor's court, respondent insists that he was bound to do it in a respectful manner, and for a proper purpose. Respondent, believing that said Posey has so conducted himself as to render him unfit to appear or be heard before respondent, and believing him to be not entitled to appear, admits that he does not intend to let him come before respondent as mayor in the character of an attorney-at-law. No person before respondent ever claimed said Posey as his attorney, or asked that said Posey be allowed to appear in his case. Respondent has

been in the habit of admitting such of the legal profession as wished to come into his court and defend parties; but he has allowed it as a matter of courtesy, not of right, supposing that they came there from a proper motive. They demeaned themselves with propriety, which said Posey did not do."

The circuit court overruled the exceptions, and awarded a peremptory *mandamus*; from which ruling and decision said Withers now appeals, and here assigns the same as error.

R. H. SMITH, for the appellant.—1. That an appeal lies in this case, see Code, § 3016; Etheridge v. Hall, 7 Porter, 47; Tarver v. Commissioners' Court of Tallapoosa, 17 Ala. 527; Falkner v. Commissioners' Court of Randolph, 19 Ala. 177.

2. The petition shows no right in the relator to practice law. In it he alleges, under oath, that he is a "practitioner of law, *in all the courts of this State.*" This is either an allegation of a right to practice in the supreme court, or it is not an allegation of a right to practice in any court; and as Mr. Posey was admitted to the bar of the supreme court only a few days ago, since his petition was filed and sworn to, the latter construction must be adopted, or he becomes involved in the crime of perjury. He may have practiced in the supreme court, or in any other court, without license or authority; but, unless he is an attorney, regularly licensed, and has taken the prescribed oath, he has no right to practice as an attorney in any court. For this reason, if for no other, the respondent's exception should have been sustained.

3. When a man asks to be restored to an office by *mandamus*, he must show clearly that he has the right, and that he has no other remedy. When Posey applied to practice before the mayor, he should have produced and exhibited his license as the evidence of his right, in order that the court might see whether he was entitled to practice, and in what courts.—7 East, 345; 1 Ala. 15; 25 Ala. 72. When the mayor's return to the rule

Withers v. The State, ex rel. Posey.

*nisi* is looked at, these objections become conclusive; and that return is to be taken as true.—9 Sm. & Mar. 77. Nor does the petition show that Posey was entitled to be heard before the mayor, on either of the occasions specifically mentioned. He alleges, that he *appeared* as counsel for the persons named; but not that he had been employed by them, or that either of them desired his services. In the case of Catherine Russell, moreover, it is shown that the mayor did nothing more than control the examination of witnesses, as he had undoubted right to do.—Municipal Laws of Mobile, 44, § 111. Besides, Posey's conduct and publications, as shown in the respondent's answer, were violations of his duty as an attorney, and justified the mayor in excluding him from the bar.—Rex v. Borron, 3 Barn. & Ald. 432. The petition only shows, at most, that Posey was denied the exercise of his right to practice law before the mayor on two specified past occasions—not that he has been deprived of his right to practice law.

4. *Mandamus* is not the remedy to restore the relator to his right generally to practice before the mayor.—*Ex parte* Secombe, 19 How. 9; Rex v. Canterbury, 8 East, 212; 1 Serg. & R. 187; 18 Wendell, 95. The case in 1 Johnson's Cases, 181, cited by the relator, is based on the peculiar legislation of New York, and has been since shaken, if not overturned.—Note to 2d edition, 184.

5. The broad proposition is maintained by the appellant, that an attorney has no right to practice before the mayor. Proceedings before the mayor, for the violation of municipal ordinances, are neither " civil causes," nor " criminal prosecutions," within the meaning of the 10th and 29th sections of the bill of rights : they are merely *quasi*-criminal proceedings.—23 Ala. 722; 8 Ala. 515; 27 Vermont, 360. If they were criminal prosecutions, they would have to be carried on in the name of the State, and conclude " against the peace and dignity of the same." —Constitution, art. 5, § 17. Besides, the 10th and 29th sections of the bill of rights secure rights to parties only, and have no reference to the rights of attorneys, which are left to be regulated by the legislature. Nor,

so far as the rights of parties are concerned, do they extend to and include proceedings before a police court. The constitutional provisions respecting the right to be heard by counsel and the right of trial by jury, are co-extensive, and borrowed from *Magna Charta*. They have no reference to petty offenses, but were intended to secure the people's rights in trials for high crimes. At common law, in all prosecutions for misdemeanors, the defendant had the right to be heard by counsel; but this right was held not to include a criminal inquiry before a justice of the peace as a committing magistrate.—Burn's Justice, 45; 4 Bla. Com. 356; 2 Barn. & Adol. 669; 3 Barn. & Ald. 432; 1 Barn. & Cress. 48; Bailey v. Delaplaine, 1 Sandford, 11; 2 Dev. & Bat. 451; 27 Vermont, 318, 325, 360; 11 Mass. 385; Tims v. The State, 26 Ala. 165. The right to be heard by counsel has never been supposed by the courts, either in England or America, to apply to the various police tribunals. Notwithstanding the broad language of the 28th and 29th sections of the bill of rights, proceedings are daily carried on before statutory tribunals, without either counsel or jury. Removal of infectious persons, destruction of clothes or other property infected with disease, quarantine laws, road laws, allotments of dower, *ad quod damnum* cases, and other similar proceedings, are instances in which great rights may be determined without jury or attorneys; for a trial by jury means a jury of twelve men. 1 Sandford, 11; 2 Barn. & Adol. 669; 1 B. & C. 48; 3 B. & Ald. 432. The charter of Mobile requires the mayor " to examine all witnesses that may appear or be subpœnaed before him, both on the part of the corporation, and on the part of the delinquents, and to give judgment as to him shall appear just and legal."—Municipal Laws, 44, § 111. The mayor's court is not provided with any prosecuting officer; the mayor is not supposed to be a professional man; the proceedings before him are somewhat summary; most of the cases tried before him do not require legal learning or abstruse investigation; and if any party desires counsel, or a jury, he can remove the case to a court where such things rightfully belong.

BEN LANE POSEY, *contra.*—1. The appellee moves to dismiss the appeal, on the ground that no appeal lies in such case. *Certiorari* is the only mode of reviewing a decision in a summary proceeding.—2 Wheaton's Selwyn, 1094; 13 Wendell, 130; 8 Peters, 291; 2 Mass. 444; 5 Mass. 422; 11 Mass. 465; 12 Johns. 30; Ld. Raymond, 213, 254, 454; 1 Salkeld, 144, 136; 3 Blackst. Com. 396; Viner's Abr. *Certiorari,* (D,) *Error,* (G;) 2 Tidd's Practice, 1078; 8 Mod. 27; 2 Binney, 80, 91; 1 Strange, 536; 2 Bro. P. C. 554; 2 Salkeld, 503; 2 Caines' Cases, 143; 2 Bacon's Abr. 189–91; 24 Ala. 98; 25 Ala. 74; 28 Ala. 436. It has never been decided by this court that a writ of error lies upon the award or refusal of a *mandamus.*— 3 Porter, 416; 7 Porter, 48; 18 Ala. 436; 19 Ala. 72.

2. The allegations of the petition sufficiently show the relator's right to practice law. He could not legally be " a practitioner of law," unless he was regularly licensed as an attorney. The term may not be a technical one, but in common usage its meaning is well defined and understood. It appears, also, that the relator had paid the city tax as an attorney, and it is not shown that his license was ever doubted, or required to be produced.

3. The great question of this case is, whether parties who are before the mayor of Mobile, either on trial or examination, have the right to be heard by counsel. If they have such right, counsel must have the right to appear for them. The 10th and 29th sections of the bill of rights are conclusive on this point. Sections 3400, 3401, and 3403 of the Code, are equally clear. Section 729 of the Code declares, that attorneys shall practice "in the courts of this State." Section 34 of the city charter requires the mayor to hold "a court" daily. Sections 33, 34, 111, and 112, define the powers of the mayor, and prescribe the proceedings before him. He is a justice of the peace—nothing more, and something less : he issues process as a justice of the peace ; he has the same general criminal jurisdiction as a justice of the peace ; he tries for the violation of city ordinances as a justice of the peace, and his judgments are enforced

by *fieri facias* as before a justice of the peace.

4. If the relator had the right to appear before the mayor, *mandamus* is his proper remedy.—See numerous cases above cited; also, People v. Justices of Delaware, 1 Johnson's Cases, 181.

R. W. WALKER, J.—1. The motion to dismiss the appeal must be overruled. It is well settled by our previous decisions, that an appeal lies to this court, from a judgment of the circuit court, awarding or refusing a *mandamus*.—Etheridge v. Hall, 7 Porter, 47; Tarver v. Comm'rs' Court of Tallapoosa, 17 Ala. 527; Falkner v. Judge, &c., 19 Ala. 177; Brooks v. Kirby, 19 Ala. 74; Riggs v. Pfister, 21 Ala. 469; Tenn. & Coosa Rivers R. R. Co. v. Moore, at this term.

2. The invariable test, by which the right of a party applying for a *mandamus* is determined, is to inquire, first, whether he has a clear legal right; and if he has, then, secondly, whether there is any other adequate remedy to which he can resort, to enforce his right.—People v. Thompson, 25 Barb. 76. In this case, the relator fails to show a clear legal right to practice in the mayor's court, or, indeed, in any of the courts of this State. The only persons who are entitled to practice in the courts of this State, are those who were regularly licensed under the laws of this State before the adoption of the Code, and those who, since the adoption of the Code, have been admitted by a license from the supreme court, the court of chancery, or a circuit court.—Code, § 729. Persons licensed since the adoption of the Code, are not entitled to practice, until they take the oath prescribed by section 735; and those who were regularly licensed before the passage of the Code, " can practice only in such courts as their license authorizes them."—Code, § 730 The relator alleges, that " he is a practitioner of law in all the courts of this State, both of state and federal jurisdiction." We do not think that this is a sufficient allegation of his legal right to practice in the courts named. It is not alleged, nor was it shown on the hearing of the application, that the relator was regularly licensed

Withers v. The State, ex rel. Posey.

under the laws of this State before the adoption of the Code, or that he had since that time been admitted by a license from a court competent to grant it, and had taken the oath prescribed. The essential prerequisites to a legal right to practice in any of the courts of this State not having been alleged, the 3d exception to the petition should have been sustained, and the court erred in awarding the *mandamus*. In a proceeding of this sort, the relator must distinctly aver all the facts necessary to give him the right which he claims.—See Tapping on *Mandamus*, 27–8, 186, 193, 293–4, 320–1; Rex v. Jotham, 3 Term R. 178; Kimball v. Morris, 2 Metc. 573, 576; Cullum v. Latimer, 4 Texas, 329; 1 Chitty's Prac. 798, 800, 808; The King v. Bishop of Oxford, 7 East, 345; Queen v. Mayor, 13 Ad. & Ell. (N. S.) 1; see the forms pursued in 19 How. (U. S.) 9.

We do not inquire whether the allegations of the petition were in other respects sufficient.

3. We might stop here; but, if we did so, the main question involved in this controversy would be left unsettled; and, under the circumstances, we feel it our duty to declare our views in regard to it. That question is, whether an attorney, who has obtained a license from the supreme, circuit, or chancery court, and taken the prescribed oath, has a legal right to practice in the mayor's court in Mobile.

We do not think that the 10th and 29th sections of the bill of rights, (Const. of Ala. art. 1, §§ 10, 29,) apply to proceedings before a mayor, for the violation of city ordinances. The 10th section declares, that "in all criminal prosecutions, the accused has the right to be heard by himself and counsel." The common-law definition of a *crime*, as given by Blackstone, is, an act committed or omitted in violation of a public law, (4 Blackst. Com. 3;) and the term "criminal prosecutions," as employed in the constitution, relates exclusively to prosecutions for violations of the public laws of the State. A city ordinance is not a public law of the State, but a local law of a particular corporation, made for its internal police and good government. Moreover, if municipal cases before

a mayor of a city or town were "criminal prosecutions" in the sense of the constitution, they would have to be carried on in the name of the State, and conclude "against the peace and dignity of the same."—Const. of Ala. art. 5, § 17. It would follow, also, that an acquittal or conviction before the mayor would be a bar to any other prosecution for the same offense, which, it is well settled, is not the case.—See Mayor of Mobile v. Rouse, 8 Ala. 515; State v. Estabrook, 6 Ala. 653; Williams v. City Council, 4 Geo. 509; Floyd v. Commissioners, 14 Geo. 354; Mayor of Mobile v. Allaire, 14 Ala. 400.

Nor are these proceedings for violations of city ordinances "*civil causes,*" in the sense of the 29th section of the bill of rights, which declares, that "no person shall be debarred from prosecuting or defending any *civil cause*, for or against him or herself, before any tribunal in this State, by him or herself or counsel." The civil causes here spoken of are those which deal with *private wrongs;* that is, with acts which constitute an infringement or privation of the private or civil rights belonging to individuals. These terms, therefore, include only those legal proceedings which seek *redress* for civil injuries. But city ordinances are *punitive* regulations; and the object of a proceeding for the violation of them, is not redress for a civil injury, but the punishment of an offender against the peace and good order of society. Hence, they are termed *quasi*-criminal proceedings.—See Brown v. Mayor of Mobile, 23 Ala. 722; Mayor of Mobile v. Rouse, 8 Ala. 515; Mayor v. Allaire, 14 Ala. 400. We must, therefore, look elsewhere for the right of counsel to appear on the trial of municipal cases before the mayor.

It is provided by the Code, that persons admitted to the supreme court, after the adoption of the Code, "may practice in all the courts in this State;" and those admitted by any chancery or circuit court, "may practice in any court of the State, except the supreme court."—Code, § 730. Is the court which the mayor of Mobile holds for the trial of offenders against the municipal laws of the city, "a court in this State," within the meaning of this section of the Code? It would be an unwarrantable perversion of plain language to hold that it is not. According

Withers v. The State, ex rel. Posey.

to Lord Coke, "a court is a place where justice is judicially administered." — 1 Coke's Littleton, 58 (a.) In Groenvelt v. Burwell, (1 Salkeld, 200,) Chief-Justice Holt said : " Whenever a power is given to examine, hear and punish, it is a judicial power, and they in whom it is reposed act as judges ; and whenever there is a jurisdiction erected, with power to fine and imprison, that is a court of record, and what is there done is matter of record." See, also, 3 Blackst. Com. 24-5. By the city charter, the mayor is required to hold " a court," daily, for the trial of all offenders against the laws and ordinances of the corporation. He issues process, as a justice of the peace, for the arrest of offenders ; subpœnas and examines witnesses, both for the corporation and the defendant, and gives judgment as shall appear to him legal and just, which is enforced by execution, to be issued by the clerk of the corporation. — Municipal Laws of Mobile, p. 18, § 34 ; p. 44, §§ 111, 112. The court which the mayor holds is an "inferior jurisdiction," in the sense of the constitution, and is, therefore, subject to the general superintendence and control of the supreme court.—Const. of Ala., art. 5, § 2. Its proceedings may be revised by the circuit court, and afterwards by this court; and its judgments, in matters within its jurisdiction, are final and conclusive until reversed or set aside.—Intendant of Marion v. Chandler, 6 Ala. 899. Here are all the characteristics of a court— an officer, sitting at stated times appointed by law, authorized to bring parties and witnesses before him, and clothed with the power to hear evidence, to decide questions of law and of fact, to try and determine causes according to legal rules, to punish offenders, and to render judgments, which are enforceable by execution, and final and conclusive until reversed or set aside by a revising tribunal.

The constitutional and statutory provisions securing to suitors and accused persons the right to the aid of counsel, and section 730 of the Code, defining the courts in which attorneys have the right to practice, all relate, directly or indirectly, to the same subject-matter. For the right of a party to the aid of counsel, in any particular proceeding or court, would be a barren right, if there were no

counsel authorized to appear in his behalf. While, there-
fore, it is true that the constitutional and statutory pro-
visions securing to parties the right to the assistance of
counsel do not apply to the trial of municipal cases before
a mayor; yet they serve to indicate the general spirit and
policy of our laws upon the subject; and we should strive
to put such a construction upon section 730 of the Code,
as will make it harmonize with that spirit and policy.

We have already observed, that by the constitution,
the right to be heard by himself and counsel, is secured
to the accused in all "criminal prosecutions."—Const.
art. 1, § 10. These terms include every prosecution for
a violation of the criminal laws of the State, in a court
authorized to determine the question of guilt or inno-
cence by a judgment of acquittal or conviction, no matter
how trifling the alleged offense, or how insignificant the
punishment awarded. In like manner, the parties to the
pettiest "civil cause" that may be tried before a justice
of the peace, or "any tribunal in this State," have a con-
stitutional right to the aid of counsel.—(Const. art. 1,
§ 29.) In all preliminary inquiries before committing
magistrates, no matter what the grade of the offense
charged, the legislature has secured to the accused the
right to the aid of counsel, although such an investigation
is not, in a legal sense, a *trial*, which means an inquiry in
which the guilt or innocence of the accused is finally
passed upon. The committing magistrate exercises an
authority judicial in its nature, but is not clothed with
judicial power. He has no authority to acquit or con-
demn. His action does not conclude either the State or
the accused. He may discharge the defendant, and yet
the grand jury may indict, and the petit jury convict
him. He may bind the party over; but the grand jury
can ignore the bill. Hence, it has been said, that a com-
mitting magistrate does not act as a court of justice, but
only as an officer deputed by law to conduct a preliminary
inquiry.—See *Ex parte* Gist, 26 Ala. 161–2; Cox v. Cole-
ridge, 1 Barn. & Cress. 37, 50, 52–3–4.

A trial before a mayor, for a breach of city ordinances,
may often involve much more serious consequences to

the accused than a prosecution by indictment in the circuit court, a civil cause before a justice of the peace, or a preliminary investigation before a committing magistrate. In all of these last named proceedings, the right to the aid of counsel is carefully secured; and the law would be inconsistent, if it denied the same right to persons on trial for a violation of city ordinances. It not unfrequently happens, indeed, that the same act is a violation of the public law of the State, and also of the police regulations of a corporation; and it is at least supposable, that the punishment prescribed by the corporation might, in some cases, be more severe than that provided by the legislature for the same offense. If, in such a case, the party were prosecuted, as he well might be, both before the mayor and the circuit court, it would seem anomalous, as well as unjust, to concede the right to the aid of counsel in the court where the punishment would be slight, and to deny it in the court where the punishment would be severe.

On the whole, our opinion is, that an attorney, who has been regularly admitted to practice in accordance with the provisions of the Code, has a legal right, when employed for that purpose, to appear as counsel for persons on trial before the mayor of Mobile, for alleged violations of the city ordinances.

The right of such an attorney to appear as counsel for the accused, on a preliminary inquiry before the mayor as a committing magistrate, is also clear, though it stands upon a somewhat different footing. By the city charter, the mayor has the power " to examine and commit, or discharge on bail, all persons charged with offenses not capital, in the same manner as justices of the peace." Municipal Laws of Mobile, p. 16, § 33; Acts 1843-4, p. 181, § 16. The Code expressly provides, that on preliminary investigations before committing magistrates, " the defendant may appear by counsel."—Code, § 3403. This section of the Code is as applicable when the preliminary inquiry is had before the mayor as a committing magistrate, as when it takes place before a justice of the peace, or a judge of the circuit court.—Code, § 3339. It would

be singular, indeed, if a defendant had the right to the aid of counsel before one committing magistrate in Mobile, but had not the same right before another committing magistrate in the same city. The right of the defendant to have counsel appear for him, implies the right of some counsel to appear; and, to effectuate the intention of the legislature, we hold, that an attorney who has been admitted to practice in accordance with the provisions of the Code, has the right, on being employed for that purpose, to appear as counsel for the defendant on a preliminary inquiry before the mayor of Mobile, or any other committing magistrate.

4. Under the provisions of the Code in relation to attorneys, the right to practice, which is obtained upon procuring license and taking the prescribed oath, is a legal right, of which the attorney cannot be deprived, except by a judgment of removal or suspension, rendered by the circuit court, on proceedings instituted in conformity with the directions contained in chapter 10, title 9, part 1, of the Code.—See §§ 747 to 761. These proceedings are begun by an accusation in writing, which the attorney is cited to answer. If he denies the accusation, the court proceeds to try the same; the attorney having the right to demand a trial by jury. Witnesses may be summoned, and depoitions taken, as in ordinary actions at law. A judgment of acquittal is final, but from a judgment of removal or suspension, the accused may appeal to this court.—Code, §§ 750–9.

One of the duties of attorneys, as these are defined by section 738 of the Code, is "to maintain the respect due to courts of justice and judicial officers;" and among the specified causes for the removal or suspension of an attorney, is any willful violation of this duty.—See § 748. But, until such removal or suspension has been effected by a judgment rendered in the circuit court, in a proceeding instituted for that purpose, no court in this State can lawfully deny to a regularly licensed attorney the right to practice in causes tried before it, upon the ground that the attorney has, on some past occasion, spoken disrespectfully of, or conducted himself in a manner offensive

to the court. Any "disrespectful, contemptuous, or insolent behavior in court, tending in any wise to diminish or impair the respect due to judicial tribunals, or to interrupt the due course of trial," is a contempt of court, for which the offending party may be punished in the summary manner provided by law.—Code, §§ 561-2-3. But contempts must be punished as they occur, and in the summary way directed; and a court cannot, *ex mero motu*, punish an attorney for offenses of this nature, or, indeed, for any misconduct, by a general denial of his right to practice before it. Willful misconduct in his profession, and willful violations of any of the duties enjoined upon him by law, will justify a proceeding in the circuit court for the removal or suspension of an attorney, and a judgment in either form will deprive him of his right to practice in any court. But, until such judgment is rendered, unprofessional or disrespectful conduct on the part of an attorney, though amounting to a contempt, and though furnishing sufficient cause for his removal or suspension, will not justify a court in excluding him from practicing at its bar.

5. When an attorney, who has not been removed or suspended in the mode pointed out by the Code, is prohibited by any court in which his license authorized him to practice, from appearing before it as counsel in causes in which he has been employed, this is the deprivation of a clear legal right, to the enjoyment of which he will be restored by *mandamus*. If the writ would not lie in such a case, the party would be without any adequate remedy for the wrong complained of. There are some cases in which it has been held, that *mandamus* would not lie, to restore an attorney who had been dismissed by order of court. But these are cases in which a formal order of dismissal had been made, and in which, moreover, it rested exclusively with the court making the order to determine who was qualified to become or continue an attorney of the court. Under such circumstances, the order of dismissal is held to be a judicial act, done in the exercise of a judicial discretion vested in the court by law; and a *mandamus* cannot be issued by a superior court, commanding it to reverse its decision, and restore the attorney to the

office he has lost. But, under our system, it does not rest exclusively with the several courts to determine who is qualified to become or continue an attorney of the court. On the contrary, as we have already seen, an attorney admitted by the supreme court has the legal right to practice "in all the courts in this State,"—a right of which he can be deprived only in the mode pointed out by law—that is, by a judgment of removal or suspension, rendered by the circuit court, and founded on some of the causes specified in the Code. If an attorney, who has obtained a license, and taken the proper oath, in conformity with the requirements of the Code, is prohibited from practicing in the mayor's court in Mobile, his right to a *mandamus* is clear, both upon principle and authority. Hurst's case, 1 Levinz, 75; Hastings' case, 1 Modern, 23; Rex v. Barker, 3 Burr. 1267–8; The King v. Sheriff of York, 3 B. & Ad. 770; Queen v. Lord Mayor, 13 Ad. & Ell. (N. S.) 1, 31; People v. Turner, 1 California R. 190; Tapping on *Mandamus*, 44–5, and cases cited; 6 Bacon's Abr. 424.

Judgment reversed, and cause remanded.